Caldwell, J.
This case involves a construction of the contract, as to whether certain matters stated in it constitutes liquidated damages, or a penalty. It seems that the plaintiff was the inventor of certain tools and implements to be used in the quarrying of rock; and in 1889 or ’88, the company gave to The Grafton Stone Company the license to use the plaintiff’s inventions in its quarry at Grafton for one year, with an option in the contract that if it was desirable on the part of The Grafton Stone Company to continue the contract for five years longer, that it could do so by serving notice upon the plaintiff to that effect, and if no notice was served then the silence was to be taken as a desire on the part of The Grafton Stone Company to continue as licensee for five years longer at the same terms; the terms being $250 a year.
Then there was a provision in the contract that if it was continued longer, under circumstances I will notice more definitely hereafter, that The Grafton Stone Company was to pay to the plaintiff the sum of $500 a year.
*23 This suit was brought, claiming that after the expiration -of the six years under the lease, The Grafton Stone Company used this devise for a period of three years thereafter. .And suit was brought to recover the amount named in the •contract, $1500.00.
Upon the trial of the case it turned out that during the ■second year there had been no use made of the implements by The Grafton Stone Company, but a finding on the part •■of the jury that the use had been made during the first and «third year after the expiration of the six years.
And the plaintiff claimed for such use $1000, claiming that the amount named in the contract was liquidated damages, and the defendant claimed that it was a mere penalty, and that no recovery could be had beyond the actual use 'that was made of the implements, or actual damages. The ■matter turned upon the trial in such a manner that for this use for which suit was being pressed, a recovery of about $129.00, I think, was obtained. And now,upon the special finding of the jury that a use was made of this in' the first • and third years; that some use was made of it during these years after the expiration of the lease, plaintiff claims that ■under the finding of the jury and the law of the case, it is entitled to $1000, instead of the amount that was awarded in the general verdict.
And whether the plaintiff is entitled to the $1000,or must •be content with what has been obtained upon the trial,must be determined from the construction of the contract between the parties; and whether the parties intended to stipulate for damages, or to fix a penalty, is a matter that has to be determined by the intention of the parties. It is ■purely a matter of intention, and that intention is to be determined entirely from the contract that existed between them.
No extrinsic evidence is proper in such a case, unless there is a charge of fraud or something that is itself *24 equivalent thereto; there being no such charge in this case,ifc turns upon purely a question of construction of the contract.
Now, the contract, the agreement or lease, was made the 22nd day of May, 1888, between The Knox Rook Blasting. Company and the defendant, The Grafton Stone Company.
It recites, preceding the terms of the contract, that the plaintiff has obtained certain letters patent that, are of benefit to parties who are engaged in quarrying stone, giving their date, etc., and reciting that whereas the party of the second part is desirous of making use of these inventions and improvements protected by the above recited: letters patent:
“Now, therefore, the parties have stipulated and agreed* as follows, to-wit:
“First: The party of the first part hereby licenses and empowers the said party of the second part to use and apply the improved method covered by letters patent above recited, together with all improvements that may hereafter be made-thereon and for which letters patent may issue to or become the property of the said party of the first part, at its-quarry situated near Grafton, on the line of the C. C. 0 &■ I. R. R. and O. L. & W. R. R., in the township of Carlisle, county of Lorain and state of Ohio, said quarry being now owned and operated by said second party; and in no other place or places, for and during the full term of one (1) year from the date hereof, and ending on the twenty-first day of May, A. D. 1889.
“Second: In consideration whereof, the said party of the-second part agrees to pay the sum of two hundred and fifty ($250,00) dollars, as follows, to-wit: two hundred and fifty ($250) dollars upon the first day of June, A. D, 1888, and a like sum upon the first day of June in each year during' the term of this contract as provided for upon the second page hereof.
“It is mutually understood and agreed by the parties hereto, as a part of the consideration of this contract, that the-party of the second part shall have the privilege of extension of the term of this license for the period of five years,. *25 commencing upon the twenty-second day of May, A. D.. 1889, and expiring upon the twenty-first day of May, A. D. 1894, and the consideration for the said additional term of' five years shall be the sum of twelve hundred and fifty ($1250.00) dollars, payable in equal annual installments, asset forth in section two, upon first page of this contract,, and it is further understood and agreed that the said second party may give notice in writing to said first party, on ©r before the first day of January,A. D. 1889, of its intention to accept or reject this privilege, and the failure to give-such notice shall constitute this license a contract in full force and virtue, subject to all the conditions herein, forth© above mentioned term of five years.
“Third: The party of the first part agrees to protect the party of the second part against all suits for infringement, if any, and also agrees, upon proof being furnished, to protect the said second party against any infringement of the patent above recited within the territory covered by this-license, by any or all parties illegally using the same; and the said second party agrees to immediately disclose to the said first party the facts concerning any such infringement-as shall come to their notice, and to furnish proof of the-same, when the said first party shall take immediate steps by proceeding at law, in equity or otherwise, to prevent sueh infringement.
“Fourth: It is mutually understood and agreed by the-parties hereto, that the manufacture and sale of the tools-protected by the above recited letters patent, is hereby expressly reserved to and by the party of the first part, and the use of any of said patented tools, by the party of the-second part, is hereby expressly limited to the term and life of this license, and that the party of the first part may, if' it so elect, require the return and delivery of all such tools, paying therefor the actual value of the same as ‘tool steel’.
“Fifth: -It is further mutually understood and agreed that in case the party of the second part shall, at any time after the termination of this license, as set forth in any previous-paragraph hereof, use or apply any of the tools or method® protected by the le’tters patent referred to above, without having first obtained a new license from the party of the first part, then and in that case the license fees shall be *26 double tbe sum specified in the license for at least the term of one full year, and thereafter from year to year at the increased rate, so long as any use shall be made of said tools or methods, not exceeding however the life of the patents. Anud upon failure by the said party of the second part to make payment of any of the said annual installments, the said party of the first part may, if it so elect, after having given ten days’ notice in writing to the party of tbe second part, or its agent in charge of the quarry, revoke and terminate this license; but the party of the second part shall not thereby be discharged from any liability incurred by this contract.”
There is no doubt but that the life of this contract was for one year with an option to extend. The Stone Company avails itself of that option, and it was then extended for five years under its terms, and there is no doubt but at the end of that five years this contract terminated, and there being an option in the fourth paragraph, that the plaintiff could take back the tools and pay for them the price of tool steel, or could leave them, but that should depend entirely upon its option.
The Grafton Stone Company very properly, a few days before the termination of the contract, notified tbe plaintiff that it would no longer continue to use, or no longer make any contract with it for the use of these tools and these implements, and the company in Pittsburgh responded to that letter by regretting very much their conclusion, and wishing to know the grounds on which they had come to the conclusion that they had, not to use them any loDgei.
Now the company did go on, and as the case stands before us, it is conclusive that the parties did use these implements during the first and third years after the termination of this contract in 1894, and it leaves then only the construction of this contract so far as the. fifth clause is concerned.
That is, this part of it:
‘‘It is further mutually understood and agreed that in *27 case the party of the second part shall, at any time after the termination of this license, as set forth in any previous paragraph hereof, use or apply any of the tools or methods protected by the letters patent referred to above, without first having obtained a new license from the party of the first part, then and in that case the license fees shall be double the sum specified in this license for at least the term of one full year, and thereafter from year to year at the increased rate, so long as any use shall be made of said tools or methods, or that the use is continued. ”
It seems to us that calling this a license fee when there is no license — the license has terminated, the Stone Company has refused to enter into any new license; now to call that a license fee under this contract,is certainly a misnomer. And there could be no license fee without a license, and that being a misnomer, the plaintiff now claims that it may be treated as liquidated damages for the use. that is, after the expiration of this lease. And the other party, the defendant, claims that it is a mere penalty attached for so using.
In construing this class of contracts, the courts have to ascertain certain facts as aids in the construction; one of these, the intention of the parties to the contract is to be determined. Another matter that bears upon that intention is, whether or not the damages arising from the use, as in this case, after the expiration of the license, whether the damages are such as are easily ascertainable of not. I am now putting that very strong in saying “easily ascertainable’’. -Our supreme court, in the 11th Ohio St. 849, has ptit it,- that if they are conjectural or uncertain, necessarily so, then the crurts will construe the contract as for liquidated damages; but if they are certain, or so certain that they may be definitely determined — and by that I do not mean precisely determined- — -I mean definitely determined as damages generally are in cases, then the courts will prefer to *28 "Construe the provision as a penalty rather than as liquidated damages.
And another principle clearly established by the courts is, that if there is any uncertainty as to which the parties ■intended, whether they intended liquidated damages or penalty, the courts will invariably, if the damages can be ascertained, prefer calling it a penalty rather than liquidated damages.
There is something of a question in this case, whether this shall be called liquidated damages or a penalty,and that •is to be determined by applying some of these rules, and the plaintiff insists that the reason it should be construed as liquidated damages in this case is, that the amount of • damages are not ascertainable, or are ascertainable only under difficulties to the plaintiff; but that is not sufficient. I find a number of cases where the damages are ascertained 'through much difficulty and through expense, yet it is not regarded as a sufficient reason for construing the provision -•as liquidated damages in preference to that of a penalty.
It is certainly fair to both parties to say that the amount they agreed upon for the use of these implements during the six years, is the fair value for the use — fair value for •the license.
And we have then the fair value for the use for a year in this contract itself. Having that determined,there is no uncertainty except to determine the amount of time that these -implements were used. They cannot be used at all without those persons who use them knowing pretty definitely, as «definitely as we ever get at questions of this kind, how much they were used, how long they were used, to what •extent.
And because the plaintiff cannot be upon the ground himself all the while without expense, is not sufficient ground on which to turn the scale of the construction.
So that the amount of time that these tools were used in *29 1895 and ’97, could be quite definitely ascertained, And it was in this case, as I find by looking through the testimony. There was considerable testimony on this question, and the testimony is conflicting. If the jury took one view of the testimony, it might allow much more for actual use than it would if it took the testimony of the other side of the case. And in fact, very little, if any, would have been recovered in this case if the testimony of the defendant had been followed by the jury; but the verdict seems to be a •compromise, going between the two somewhat; the general verdict in the case.
So that we then have in this case no element of uncertainty as to the damages, that does not exist in a large number of cases where the courts are very free to construe the provision in the contract as a stipulation for a penalty. That is true of a party who hires a house to be rented by ■a certain time, and the penalty attached for all time running over a year. Now it is uncertain, and largely conjecture, whether a boat that is to be completed by a certain day, as to how much she might have earned had she been in the trade from that time until the boat was actually completed.
Unless there is some special element involved in it, such contracts are almost always construed by the court to be a jpenalty.
Another element that has weight in determining this, to which class it belongs, is the amount. If the parties, when fixing the amount — If all the circumstances show that they have fixed an amount much larger than could reasonably be expected to actually flow from a violation of the terms of the contract, then in that case the tendency is always in favor of construing the contract to mean a penalty.
It is hardly consistent with the way men take care of their own affairs to believe that a man intends to stipulate ithat he will pay damages for a certain default of his, way •beyond, or much beyond what the damages will actually be.
*30 Men usually take greater care of their affairs than to make contracts of that kind; but he may be willing that a certain amount shall be named and shall be a penalty, with the understanding that nothing can be recovered but actual loss. That actual loss may exceed that penalty, or it may be less; but after it is once determined, then the party is entitled to recover his actual loss whether it be more or less than the penalty.
Now,in reading this contract, this idea appears prominent in it: Here are six years that The Grafton Stone Company is authorized to use this invention; beyond that if it wants to use it, it must make a contract.
The supposition is that the fair use of it per year is $250. The parties for six years have regarded that as the fair value for the use of it.
If The Grafton Company-wants to continue longer than that, it must make a contract; if it don’t make a contract, then it must pay $500. It looks to me very much like a penalty of $250 for not making a contract for the use of it before using it.
In other words, it is almost equivalent to saying, the use of this devise is worth $250 a year. If the defendant makes a contract, then it can have it for $250. If it does not make a contract, or if it goes on and uses it without a contract, then it shall pay $500. It looks very much like a penalty of $250 for using it without a written contract. That being true — at least the contract is so uncertain as to this that we think under all the rules for construing such-contracts as I have already stated it, that we should construe it as being a penalty, and not stipulated damages. We find therefore there was no error in this case, and the judgment is affirmed.